TPW/TMS: USAO 2019R00568

FILED _____ ENTERED
_____ LOGGED _____ RECEIVED

JAN 1 5 2020

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | CASE NO. 20-mj-192-CBD |
| | * | |
| **BRIAN MARK LEMLEY, JR.,** | * | **FILED UNDER SEAL** |
| **PATRIK JORDAN MATHEWS, and** | * | 20-mj-193-CBD |
| **WILLIAM GARFIELD BILBROUGH IV,** | * | 20-mj-194-CBD |
| | * | |
| **Defendants** | * | |
| | * | |

*******

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINTS AND ARREST WARRANTS

Your affiant, Rachid T. Harrison, Special Agent with the Federal Bureau of Investigation, being duly sworn, deposes and states as follows:

#### Introduction and Background

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been a Special Agent with the FBI for approximately three years, prior to which I spent approximately two years as a Special Agent of the Drug Enforcement Administration ("DEA"). During my tenure with the FBI and DEA, I have investigated and participated in the investigations of numerous drug trafficking and international and domestic terrorism violations and, among other things, have conducted or participated in surveillances, debriefings of informants and reviews of taped conversations and records, and the execution of search and tracking warrants. From these experiences, and from training relating to counterterrorism matters, I have become familiar with the ways in which persons finance and plan terrorist operations, including but not limited to the efforts persons involved in such activity take to disguise operations and avoid detection by law enforcement.



2. I submit this Affidavit in support of criminal complaints and arrest warrants. Based on the facts in this affidavit, I respectfully submit that there is probable cause to believe that **BRIAN MARK LEMLEY, JR. ("LEMLEY")** has committed violations of 8 U.S.C. § 1324(a)(1)(A)(ii), (iii), and (v)(I) (transporting and harboring certain aliens, and conspiracy to do so); 18 U.S.C. § 922(a)(4) (transporting machine gun in interstate commerce); 18 U.S.C. § 922(d)(5) (disposing of any firearm and ammunition to an alien illegally or unlawfully in the United States); 18 U.S.C. § 924(b) (transporting firearm and ammunition in interstate commerce with intent to commit therewith an offense punishable by a term exceeding one year); and 18 U.S.C. § 2 (aiding-and-abetting).

3. I also respectfully submit that there is probable cause to believe that **PATRIK JORDAN MATHEWS ("MATHEWS")** has committed violations of 18 U.S.C. § 922(g)(5) (alien in possession of firearm and ammunition); 18 U.S.C. § 924(b) (transporting firearm and ammunition in interstate commerce with intent to commit therewith an offense punishable by a term exceeding one year); and 18 U.S.C. § 2 (aiding-and-abetting).

4. I also respectfully submit that there is probable cause to believe that **WILLIAM GARFIELD BILBROUGH IV ("BILBROUGH")** has committed violations of 8 U.S.C. § 1324(a)(1)(A)(ii), (iii), and (v)(I) (transporting and harboring certain aliens, and conspiracy to do so), and 18 U.S.C. § 2 (aiding-and-abetting).

5. This Affidavit is based upon my participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this Affidavit is being submitted for the limited purpose of obtaining criminal complaints and arrest warrants, it does not include all the facts that I have learned during the course of this investigation. Where the contents of documents and the actions, statements, and



conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. In making this application, I am relying only on the facts stated herein.

6. Information in this Affidavit resulting from surveillance does not always set forth my personal observations, but rather at times reflects information from video surveillance, as well as information provided to me by other law enforcement agents who observed the events described and to whom I have spoken or whose reports I have read.

### Information Regarding LEMLEY, MATHEWS, and BILBROUGH

7. **LEMLEY**, **MATHEWS**, and **BILBROUGH** are members of a white supremacist organization named "The Base." Within The Base's encrypted chat rooms, members have discussed, among other things, recruitment, creating a white ethno-state, committing acts of violence against minority communities (including African-Americans and Jewish-Americans), the organization's military-style training camps, and ways to make improvised explosive devices.

8. **LEMLEY** previously served as a Cavalry Scout in the United States Army.

9. **MATHEWS** is a Canadian citizen unlawfully present in the United States. As of August 2019, **MATHEWS** was a combat engineer in the Canadian Army Reserve.

### Facts Establishing Probable Cause

10. On or about August 19, 2019, **MATHEWS** unlawfully crossed from Canada into the United States near the Manitoba/Minnesota border. Shortly thereafter, **LEMLEY** and **BILBROUGH** learned that **MATHEWS** had unlawfully crossed the border, and conspired to transport and harbor **MATHEWS** in order to conceal **MATHEWS**'s unlawful presence in the United States.

11. Based on my review of Google location data, cell phone location data, and recorded telephone calls, I know that on August 30, 2019, **LEMLEY** and **BILBROUGH** traveled by

3



vehicle from Maryland to Michigan (roughly 600 miles) in order to pick up **MATHEWS**. **LEMLEY** and **BILBROUGH** remained in the Michigan area for approximately two hours, after which all three returned to Maryland on August 31, 2019.

12. On or about November 3, 2019, using **LEMLEY**'s vehicle, **BILBROUGH** drove **LEMLEY** and **MATHEWS** from Virginia, on the Maryland-side of the Capital Beltway, and over the Chesapeake Bay Bridge. After **BILBROUGH** exited the vehicle at his Maryland residence, **LEMLEY** and **MATHEWS** travelled in the vehicle to the area of Elkton, Maryland, where **LEMLEY** obtained a motel room minutes from **LEMLEY**'s then-residence for **MATHEWS** to spend the night.

13. On or about November 4, 2019, **LEMLEY** drove **MATHEWS** to Delaware, where **LEMLEY** rented an apartment. **LEMLEY** and **MATHEWS** have resided in that apartment since that date.

14. On November 28, 2019, **LEMLEY** placed an order for an upper receiver for a long gun. The upper receiver was shipped on or about November 30, 2019, to a location in Maryland associated with **LEMLEY**.

15. During December 2019, **LEMLEY** and **MATHEWS** used the upper receiver and other firearm parts to make a functioning assault rifle.

16. On December 21, 2019, **BILBROUGH** arrived at the Delaware residence of **LEMLEY** and **MATHEWS**. Throughout the evening and into the early morning hours of December 22, 2019, **MATHEWS**, **LEMLEY**, and **BILBROUGH** discussed the manufacture of DMT, a Schedule I Controlled Substance, and attempted to actually manufacture DMT. Furthermore, **MATHEWS**, **LEMLEY**, and **BILBROUGH** discussed The Base's activities and spoke about other members of the organization. **MATHEWS** also discussed the assault rifle with



BILBROUGH and handed it to BILBROUGH, after which BILBROUGH handed the assault rifle back to MATHEWS.

17.  On January 1, 2020, at a store in Delaware, LEMLEY and MATHEWS purchased approximately 150 rounds of 5.56 mm ammunition, as well as paper shooting targets.

18.  On January 2, 2020, LEMLEY took the assault rifle from the Delaware residence to a gun range in Maryland. An FBI agent observed LEMLEY at the gun range, and heard what appeared to be more than one bullet being fired at a time. When LEMLEY returned to the Delaware residence, LEMLEY made certain comments to MATHEWS about the assault rifle firing more than one round at a time. LEMLEY also told MATHEWS, in sum and substance, that the assault rifle "would have to be cached though because that's an ATF fucking nightmare," and, "Oh oops, it looks like I accidentally made a machine gun." LEMLEY then stated to MATHEWS, in sum and substance, "Go ahead and take the lower [receiver] off, give it to me. I'm gonna stow it until next week, just in case the ATF shows up tomorrow." MATHEWS retorted, "Um, if they show up here, we got other problems."

19.  On January 5, 2020, MATHEWS and LEMLEY went from the Delaware residence to the same gun range in Maryland that LEMLEY had visited on January 2, 2020. Prior to the arrival of LEMLEY and MATHEWS, the FBI had set up a stationary camera near the gun range, and an ATF agent was in the vicinity of the range. On the stationary camera, agents observed and recorded MATHEWS in possession of a firearm. While MATHEWS appeared to shoot, LEMLEY appeared to be observing MATHEWS's shots through an unattached rifle scope. While LEMLEY and MATHEWS were observed in firing positions on camera, the ATF agent heard the report of gun fire.



20. On or about January 7, 2020, **LEMLEY** ordered approximately 1,500 rounds of 5.56 mm and 6.5 mm ammunition.

21. On or about January 11, 2020, **LEMLEY** drove **MATHEWS** from the Delaware residence to the same gun range in Maryland they had visited on January 5, 2020. While at the range, **MATHEWS** handled and fired the assault rifle.

22. When returning to the Delaware residence from the gun range on January 11, 2020, **LEMLEY** and **MATHEWS** stopped by **LEMLEY**'s prior residence in Maryland, where they retrieved plate carriers (to support body armor) and at least some of the 1,500 rounds **LEMLEY** had ordered days before.

### Conclusion

23. Based on the foregoing, I respectfully submit that there is probable cause to issue the requested criminal complaints and arrest warrants.

_____
Rachid T. Harrison
Special Agent
Federal Bureau of Investigation

Sworn to before me this 14th day of January, 2020.

_____
Honorable Charles B. Day
United States Magistrate Judge
District of Maryland